IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LANCE'S TAVERN, LLC d/b/a SKEETER'S
PUB & REGGIE'S INC.,

    Plaintiff,

  v.

SUTTON SPECIALITY INS. CO.,

    Defendant.

CIVIL ACTION
NO. 25-6245

**OPINION**

**Slomsky, J.**                  **July 22, 2026**

**TABLE OF CONTENTS**

I. **INTRODUCTION** ................................................................................................ 1

II. **BACKGROUND** ............................................................................................... 1

 a. Factual Background ....................................................................................... 1

  i. Parties ....................................................................................................... 1

  ii. Underlying State Court Action ................................................................ 1

  iii. The Sutton Insurance Policy ................................................................ 3

 b. Procedural Background ............................................................................... 7

III. **STANDARD OF REVIEW** ............................................................................... 7

IV. **ANALYSIS** .................................................................................................... 9

 a. Pennsylvania Law Will Be Applied ............................................................ 9

b.    The Sutton Insurance Policy Does Not Provide Coverage .............................................. 12

c.    Exclusions in the Sutton Policy Preclude Coverage ........................................................ 16

   i.    Liquor Liability Exclusion Applies ................................................................................ 16

   ii.    Assault and Battery Exclusion Applies .......................................................................... 22

d.    Punitive Damages Are Not Covered Under the Sutton Policy ........................................ 23

e.    Plaintiff's Claim for Bad Faith Fails ............................................................................... 25

V.    **CONCLUSION** ............................................................................................................... 27

## I.     INTRODUCTION

This case arises out of an insurance dispute between Plaintiff Lance's Tavern d/b/a Skeeter's Pub & Reggie's Inc. ("Plaintiff") and Defendant Sutton Specialty Insurance Company ("Defendant").  Presently before the Court are Plaintiff's Motion for Summary Judgment (Doc. No. 21) and Defendant's Cross-Motion for Summary Judgment (Doc. No. 32).  For reasons set forth below, Plaintiff's Motion for Summary Judgment (Doc. No. 21) will be denied and Defendant's Motion for Summary Judgment (Doc. No. 32) will be granted.

## II.     BACKGROUND

### a.  Factual Background

The following facts of record are taken from Plaintiff's Motion for Summary Judgment (Doc. No. 21) and Defendant's Cross-Motion for Summary Judgment (Doc. No. 32), and are undisputed unless otherwise noted.

#### i.  Parties

Plaintiff Lance's Tavern is a bar located in Blackwood, New Jersey.  (Doc. No. 32-1 at 2.)  Defendant Sutton Specialty Insurance Company is an insurance provider.  (Id.)  Defendant Sutton Specialty Insurance Company issued Plaintiff Lance's Tavern an insurance policy, Policy Number ISCH0200000218-01, effective from June 16, 2023 to June 16, 2024 ("the Sutton Policy").  (Id.)

#### ii.  Underlying State Court Action

Plaintiff Lance's Tavern sought coverage under the Sutton Policy after being sued in state court.  (Doc. No. 1-1.)  On April 16, 2025, Jane Doe K.K. ("Jane Doe") filed the suit in the Court of Common Pleas, Philadelphia County (the "Underlying State Court Action") alleging that after being overserved alcohol at numerous establishments, she was sexually assaulted by a Lyft

1

driver.  (Id. at 6.)  Plaintiff Lance's Tavern is a named defendant in the Underlying State Court

Action.  (Id. at 18.)  The Complaint filed in the Underlying State Court Action further alleges

that because Plaintiff Lance's Tavern overserved Jane Doe alcohol, despite being visibly

intoxicated, she was left incapacitated and therefore unable to consent to sexual acts.  (Id.)  Jane

Doe also alleges negligence by Plaintiff Lance's Tavern as well as liquor liability under 47 PA.

CONS. STAT. § 4-493, the Pennsylvania Dram Shop Act.[1]  (Doc. No. 32-1 at 7.)

On May 2, 2025, Defendant Sutton Specialty Insurance Company received a claim from

Plaintiff Lance's Tavern seeking coverage under the Sutton Insurance Policy.  (Doc. No. 32-1 at

7.)  Plaintiff turned the Complaint filed in the Underlying State Court Action over to Defendant

as part of the request for coverage.  (Id.)  More specifically, Plaintiff wanted Defendant to defend

it in the Underlying State Court Action.  (Id.)

---

[1]   Pennsylvania's Dram Shop Act provides a private right of action that permits a plaintiff to
sue when being overserved alcohol is the cause of an injury suffered.  47 PA. CONST.
STAT. § 4-493(1).  The relevant portion of the statute provides that it shall be unlawful:

> For any licensee or the board, or any employe, servant or agent of
> such licensee or of the board, or any other person, to sell, furnish
> or give any liquor or malt or brewed beverages, or to permit any
> liquor or malt or brewed beverages to be sold, furnished or given,
> to any person visibly intoxicated, or to any minor: Provided
> further, That notwithstanding any other provision of law, no cause
> of action will exist against a licensee or the board or any employe,
> servant or agent of such licensee or the board for selling,
> furnishing or giving any liquor or malt or brewed beverages or
> permitting any liquor or malt or brewed beverages to be sold,
> furnished or given to any insane person, any habitual drunkard or
> person of known intemperate habits unless the person sold,
> furnished or given alcohol is visibly intoxicated or is a minor.

Id.

2

### iii.  The Sutton Insurance Policy

The Sutton Policy contains a Commercial General Liability Coverage Form that provides as follows:

**SECTION I- COVERAGES**

**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result…

2. **Exclusions**

   **This insurance does not apply to:**

   **c.  Liquor Liability**
   "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
   (1) Causing or contributing to the intoxication of any person;
   (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
   (3) Any statute, ordinance or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.
   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:
   (a) The supervision, hiring, employment, training or monitoring of others by that insured; or
   (b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

   if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

3

> However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.  For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

(Doc. No. 32-5 at 50–51.)

The Sutton Policy also contains the Limited Assault or Battery Coverage provision which provides:

> **LIMITED ASSAULT OR BATTERY COVERAGE**
> **(Claims Expense within Coverage Limits)**
>
> **This endorsement modifies insurance provided under the following:**
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
>
> **LIQUOR LIABILITY COVERAGE FORM**
>
> **SCHEDULE**
>
> **Sub-limits of Insurance:**
> **$100,000 Each Assault or Battery Incident Sub-limit**
> **$100,000 Annual Assault or Battery Aggregate Sub-Limit**
>
> I. **LIMITED ASSAULT AND BATTERY INSURING AGREEMENT**
>
>    A. We will pay all sums the Named Insured is legally obligated to pay as damages because of "injury", "bodily injury", "property damage" or "personal and advertising injury" **arising out of an "assault or battery incident" by any insured,**
>
>    B. We will have the right and duty to defend the Insured against any "suit" seeking those damages.  However, we will have no duty to defend the Insured against any "suit" seeking damages for "injury", "bodily injury", property damage" or "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any "assault and battery incident" and settle any claim or "suit" that may result. But:

4

1. The amount we will pay for damages and the cost of defense is limited as described in Section **II LIMITS OF INSURANCE** of this coverage form; and

2. Our right and duty to defend end when we have used the applicable sub-limit of insurance in the payment of judgments or settlements under as described in Section **II LIMITS OF INSURANCE** in this coverage form

   No other obligation or liability to pay sums or perform acts or services is covered.

C. This insurance applies only if the "assault or battery incident":

a. Arises out of your operations, which includes, but is not limited to, the selling, serving or furnishing of alcoholic beverages

b. Takes place in the "coverage territory"; and

c. Occurs during the policy period

   Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury."

(Id. at 41.)

Also, the Limited Assault and Battery Coverage provision contains certain exclusions:

## II.     EXCLUSIONS

A. Additional Exclusion Applicable to the COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following exclusion is added to the COMMERCIAL GENERAL LIABILITY COVERAGE FORM:

Injury, damage or loss, however caused, arising, directly or indirectly, out of:

   1. Assault;
   2. Battery;
   3. Any "assault or battery incident."

B. Additional Exclusion Applicable to the LIQUOR LIABILITY COVERAGE FORM

The following exclusion is added to the LIQUOR LIABILITY COVERAGE FORM:

This insurance does not apply to "injury", damage or loss, however, caused, arising directly or indirectly, out of:

   1. Assault;
   2. Battery;
   3. Any "assault or battery incident."

C. Exclusions Applicable to the LIMITED ASSAULT AND BATTERY COVERAGE

This insurance does not apply to:

1. "Injury", claim or loss, however caused, arising, directly or indirectly, out of sexual assault, abuse or molestation.

2. Any claim for punitive or exemplary damages.

5

> Further, the Exclusions applicable to the LIQUOR LIABILITY
> COVERAGE FORM shall also apply to LIMITED ASSAULT
> AND BATTERY COVERAGE.

(Id. at 42.)

Moreover, the Sutton Policy includes numerous definitions pertinent to the Limited

Assault and Battery Coverage provision:

### IV. DEFINITIONS

> "Assault or battery incident" means any harmful or offensive
> contact between or among two or more persons including, but not
> limited to, apprehension of harmful or offensive contact or threats
> or harmful or offensive contact.  An "assault or battery incident"
> may be:
> a.  provoked or unprovoked by any person; and
> b.  arise out of or result from any act or omission in connection with:
> (1) Prevention or suppression of an "assault or battery incident";
> (2) Protection of persons or property;
> (3) Negligent hiring, supervision, retention or training of any
>     "employee" of the Insured; or
> (4) Implementation of adequate security measures, through security
>     personnel, surveillance or other security devices.

(Id. at 42–43.)

Finally, the Sutton Policy excludes coverage for Punitive or Exemplary damages:

### EXCLUSION-PUNITIVE OR EXEMPLARY DAMAGES

> This endorsement modifies insurance provided under the
> following:
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> LIQUOR LIABILITY COVERAGE FORM
> Regardless of any other provision of this policy, this policy does
> not apply to punitive or exemplary damages.
> If a "suit" is brought against any insured, and falls within the
> coverage provided by the policy, seeking both compensatory
> damages (damages for economic loss and pain and suffering) and
> "punitive or exemplary damages" (damages as a means of
> punishment), no coverage shall be provided by this policy for any
> costs, interest, defense costs, attorney or legal fees, or any type of
> damages attributable to punitive or exemplary damages.
> "Punitive or exemplary damages" means those damages imposed
> to punish a wrongdoer and to deter others from similar conduct.

(Id. at 34.)

6

As noted <u>supra</u>, on May 2, 2025 Defendant Sutton Specialty Insurance Company received the claim from Plaintiff Lance's Tavern seeking coverage under the Sutton Insurance Policy in connection with the Underlying State Court Action in the Philadelphia Court of Common Pleas. (Doc. No. 32-1 at 7.)  But, on May 13, 2025, Triton Claim Management, LLC, the authorized representative for Defendant, sent a letter to Plaintiff denying coverage.  (<u>Id.</u> at 7–8.)

### b.  Procedural Background

On October 2, 2025, Plaintiff commenced this action in the Philadelphia Court of Common Pleas seeking a declaratory judgment that Defendant must defend and indemnify Plaintiff in the Underlying State Court Action brought by Jane Doe K.K. for any damages incurred.  (Doc. No. 32-1 at 8.)  On November 3, 2025 Defendants Sutton Specialty Insurance Company and Triton Claim Management, LLC[2] removed the case to this Court.  (Doc. No. 1.) On December 10, 2025, the parties filed a stipulation voluntarily dismissing Defendant Triton Claim Management, LLC from the case.  (Doc. No. 16.)  Since then, the parties have filed Cross-Motions for Summary Judgment.  (Doc. Nos. 21, 32.)   Having been fully briefed, the Cross-Motions for Summary Judgment (Doc. Nos. 21, 32) are now ripe for disposition.

### III.   STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy.  Summary judgment is

---

[2]   Triton Claim Management, LLC ("Triton") is a third-party claims administrator.  (Doc. No. 7 at 5.)  On November 7, 2025, Triton filed a Motion to Dismiss, arguing that because (1) it is not Plaintiff's insurer and (2) it has no contractual relationship with Plaintiff, the Complaint seeking defense and indemnity under the Sutton Policy from Triton failed as a matter of law. (<u>Id.</u>)  On December 10, 2026, Triton filed a Motion to Withdraw the Motion to Dismiss (Doc. No. 14) which was granted the same day.  (Doc. No. 15.)  Shortly thereafter, the parties agreed to dismiss Triton from the case.  (Doc. No. 16.)

appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the Court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Hart v. Elec. Arts, Inc., 717 F.3d 141, 148 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)). "A dispute 'is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.'" Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 213 (3d Cir. 2017) (citing Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). A disputed fact "is material only if it might affect the outcome of the suit under governing law." Id. Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Meditz v. City of Newark, 658 F.3d 364, 369 (3d Cir. 2011) (quoting Azur, 601 F.3d at 216). "The moving party is entitled to judgment as a matter of law when the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" Range v. AG United States, 53 F.4th 262, 269 (3d Cir. 2022) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247–49. Whenever a factual issue arises which cannot be resolved without a credibility

8

determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party. Id. at 255. If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

In addition, the standards applied in deciding cross-motions for summary judgment are the same as those when only one party has moved for summary judgment. Cincinnati Ins. Co. v. Devon Int'l., Inc., 924 F. Supp. 2d 587, 589 n.3 (E.D. Pa. 2013). "When confronted with cross-motions for summary judgment, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" Anderson v. Franklin Inst., 185 F. Supp. 3d 628, 635 (quoting Schlegel v. Life Ins. Co. of N. Am., 269 F. Supp. 2d 612, 615 n. 1 (E.D. Pa. 2003)).

## IV.    ANALYSIS

### a. Pennsylvania Law Will Be Applied

To begin, the Court has jurisdiction over this case because (1) the amount in controversy exceeds $75,000 and (2) the parties are citizens of different states. See 28 U.S.C. § 1332(a)(1); (Doc. No. 1 at 2) (noting the basis of removal from state court). This is known as diversity of citizenship jurisdiction. It is well settled that a federal court sitting in diversity must apply federal procedural law and state substantive law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). This is known as the Erie doctrine. The Erie doctrine requires that a federal court sitting in diversity apply the conflict of law of rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941).

The first point of contention between the parties is whether the laws of New Jersey or Pennsylvania control here. Defendant contends that the law of New Jersey governs the dispute.

9

(Doc. No. 31 at 4.)  Conversely, Plaintiff submits that the law of Pennsylvania applies.  (Doc. No. 21.)

Pennsylvania's choice of law analysis requires courts to first determine whether an actual conflict exists.  Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007) (citing Griffith v. United Air Lines, Inc., 203 A.2d 796 (Pa. 1964)).  An actual conflict exists when the laws of two states differ.  Id. at 230.  However, when the laws of two states are the same—meaning there is no conflict—a choice of law analysis is unnecessary.  Id.  Absent a relevant difference in the law between two states, district courts sitting in diversity may rely on the law of the forum state.  Williams v. U-Haul Int'l, Inc., 2016 WL 6821872, at *2 (E.D. Pa. Nov. 18, 2016) (citing Specialty Surfaces Int'l, Inc. v. Cont'l Co., 609 F.3d 223, 229 (3d Cir. 2010) (applying the law of Pennsylvania instead of Illinois because no actual conflict between the respective states' laws governing negligence existed)).

Defendant maintains the law of New Jersey governs because: (1) Defendant and Plaintiff understood New Jersey to be the "principal location of the insured risk during the term of the policy" because Plaintiff's business is located in New Jersey; (2) Plaintiff's alleged acts at issue in the underlying State Court Action occurred in New Jersey; and (3) the alleged assault occurred in New Jersey.  (Doc. No. 31 at 5.)  Conversely, Plaintiff asserts that Pennsylvania law applies—but fails to provide substantive reasons why.  (Doc. No. 21 at 6.)  However, both parties concede the outcome is the same regardless of whether the laws of New Jersey or Pennsylvania apply here.  (Compare Doc. No. 31 at 5) ("In any event, under both Pennsylvania and New Jersey Law [Plaintiff's] [Motion for Summary Judgment] should be denied…") (with Doc. No. 33 at 9) ("[Defendant] argues that New Jersey Law governs the interpretation of the policy. This argument does not alter the outcome of the present action.").

10

New Jersey law mandates that the duty to defend is triggered when a complaint alleges a covered claim because "it is the nature of the claim for damages…[that] triggers the obligation to defend." Polarome Int'l., Inc. v. Greenwich Ins. Co., 961 A.2d 29, 47 (N.J. Super. Ct. App. Div. 2008) (quoting L.C.S., Inc. v. Lexington Ins. Co., 853 A.2d 974 (N.J. Super. Ct. App. Div. 2004). Further, the duty to indemnify "exists except with respect to occurrences for which the policy provides coverage." Id. (quoting Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 483 A.2d 402 (N.J. 1984)).

Pennsylvania law is similar: an insurer's duty to indemnify is triggered after a determination that the insured is liable for damages within the scope of the policy's coverage. Those Certain Underwriters & Insurers Subscribing to Lloyd's Pol'y No. SP93/7131 v. 6901 Frankford Ave., Inc, et al., No. 96-4733, 1997 WL 22407, at *2 (E.D. Pa. Jan. 21, 1997). The duty to defend, however, is triggered when the factual allegations in the underlying complaint actually or potentially are within the scope of the policy. Id. But if the factual allegations cannot possibly be within the scope of the policy, an insurer has neither the duty to indemnify nor defend the insured. Id.

New Jersey and Pennsylvania likewise take similar approaches to interpreting the terms of an insurance policy. Under New Jersey law, an insurance policy is interpreted according to its plain and ordinary meaning. Polarome Int'l., Inc., 961 A.2d at 38. Likewise, in Pennsylvania, a court must construe an insurance policy as a whole and according to the plain meaning of its terms. Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 666 (3d Cir. 2016). Additionally, both New Jersey and Pennsylvania construe ambiguities in favor of the insured. See Polarome Int'l, Inc., 961 A.2d at 38; Ramara, Inc., 814 F.3d at 677.

11

Finally, and most importantly, both New Jersey and Pennsylvania approach the determination of whether coverage exists under a given insurance policy similarly. In New Jersey, "[t]he complaint [is] [] laid alongside the policy and a determination [is] made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured." Polarome Int'l, Inc., 961 A.2d at 47. Likewise, in Pennsylvania, courts employ the "four corners rule" which requires comparing the four corners of the insurance policy with the four corners of the underlying complaint. AIX Specialty Ins. Co. v. Am. Legion Dep't of Pennsylvania, No. 21-cv-2338, 2022 WL 767834, at *7 (E.D. Pa. Mar. 14, 2022). If the underlying state court complaint alleges an injury which could be within the scope of the policy, the insurer owes a duty to defend until the insurer can "confine the claim to a recovery that the policy does not cover." White Pine Ins. Co. v. Bala Inn, Inc., No. 17-2789, 2018 WL 1141356, at *5 (E.D. Pa. Mar. 2, 2018).

Given that no apparent conflict between the laws of New Jersey and Pennsylvania is evident, and that both parties concede the outcome remains the same irrespective of whether the Court employs the laws of New Jersey or Pennsylvania, the Court will use the law of the forum state, Pennsylvania.

### b. The Sutton Insurance Policy Does Not Provide Coverage

The gravamen of the dispute between Plaintiff and Defendant is whether the facts alleged in the Underlying State Court Action fall within the scope of coverage in the Sutton Policy. In the Motion for Summary Judgment, Plaintiff submits that because the Underlying State Court Action alleges Plaintiff negligently served alcohol to a visibly intoxicated Jane Doe

12

in violation of Pennsylvania's Dram Shop Act,[3] which ultimately led to Jane Doe's sexual

assault, Defendant owes a duty to defend. (Doc. No. 21 at 5.) On the other hand, in the Cross-

Motion for Summary Judgment, Defendant asserts that because the Underlying State Court

Action alleges a sexual assault by a third-party not employed by Plaintiff, conduct of the third-

party is not covered under the terms of the policy between Defendant and Plaintiff. (Doc. No.

32-2 at 8.)

 Under Pennsylvania law, an insurer's duty to defend is broader than its duty to indemnify.

White Pine Ins. Co., 2018 WL 1141356, at *5 (citing Sikirica v. Nationwide Ins. Co., 416 F.3d

214, 225 (3d Cir. 2005)). However, absent a duty to indemnify, there is no duty to defend. Id.

To determine whether an insurer owes a duty to defend in the Underlying State Court Action, the

allegations in the state court complaint must be compared with the language of the insurance

policy issued by the insurer to the insured:

> [a]n insurer's duty to defend an action against the insured is
> measured, in the first instance, by the allegations in the plaintiff's
> pleadings…In determining the duty to defend, the complaint
> claiming damages must be compared to the policy and a
> determination made as to whether, if the allegations are sustained,
> the insurer would be required to pay resulting judgment…[T]he
> language of the policy and the allegations of the complaint must be
> construed together to determine the insurer[']s obligation.

Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. Super. Ct. 2007).

 If the underlying state court complaint alleges an injury which could be within the scope

of the policy, the insurer owes a duty to defend until the insurer can "confine the claim to a

recovery that the policy does not cover." White Pine Ins. Co., 2018 WL 1141356, at *5. Thus, to

conclude whether a claim is covered by an insurance policy, a court must employ the "four

---

[3]  See supra note 1, for a full recitation of the relevant portions of Pennsylvania's Dram Shop
Act, 47 PA. CONST. STAT. § 4-493(1).

corners rule." AIX Specialty Ins. Co., 2022 WL 767834, at *7.  The four corners rule asks a court to compare the four corners of the insurance policy with the four corners of the underlying complaint.  Id.  Under the four corners rule, a court, when determining if there is coverage under a policy, need not look beyond the allegations of the underlying complaint nor consider extrinsic evidence.  Id.  Moreover, "the mere allegation of 'negligence' is insufficient to trigger an insurer's duty to defend."  White Pine Ins. Co., 2018 WL 1141356, at *5.  And the duty to defend may be abrogated where the allegations of the underlying complaint fall within what is clearly and unambiguously excluded under the terms of the policy.  Id.

To begin, here, Defendant asserts there is no coverage under the Sutton Policy.  (Doc. No. 32-2 at 6.)  To support this position, Defendant cites the Limited Assault And Battery Coverage Endorsement, which states, in pertinent part:

> We will pay all sums the [n]amed [i]nsured is legally obligated to pay as damages because of 'injury'… arising out of an 'assault or battery incident' by any insured.

(Id. at 6–7.)

The parties do not dispute that the sexual assault alleged by Jane Doe qualifies as an "assault and battery incident" as defined under the policy.[4]  (See Doc. Nos. 21, 32.)  However,

---

4    The Sutton Policy defines an "assault or battery incident" as:

> IV. DEFINITIONS
>  "Assault or battery incident" means harmful or offensive contact between or among two or more persons including, but not limited to, apprehension of harmful or offensive contact or threats or harmful or offensive contact.
>
> An "assault or battery incident" may be:
> a. provoked or unprovoked by any person; and
> b. arise out of or result from any act or omission in connection with:
> (1) Prevention or suppression of an "assault or battery incident";
> (2) Protection of persons or property;

Defendant maintains that because the sexual assault was committed by a third-party—and not by an insured—there is no coverage under the policy.  (Id.)  Conversely, Plaintiff argues that because the sexual assault as alleged by Jane Doe was not committed by "any insured", the exclusion does not apply.  (Doc. No. 34 at 11.)  Instead, Plaintiff avers that to interpret the exclusion to bar coverage for assault and battery incidents committed by third parties would "improperly expand its language beyond its plain terms and effectively eliminate the Liquor Liability Coverage Form purchased by the insured."  (Id.)  Notably, neither party argues that the Sutton Policy, or the language contained therein, is ambiguous.[5]

Here, in comparing the four corners of the Underlying State Court Action with the language in the Sutton Policy, Defendant does not owe Plaintiff a duty to defend.  The plain language of the Limited Assault and Battery Coverage Endorsement limits coverage to "assault and battery incidents" committed by "any insured."  (Doc. No. 32-2 at 6) (emphasis added). Once again, the Limited Assault and Battery Coverage Endorsement states:

> We will pay all sums the Named Insured is legally obligated to pay
> as damages because of "injury", "bodily injury", "property
> damage" or "personal and advertising injury" arising out of an
> "assault or battery incident" by any insured.

(Id. at 7.)  The phrase "[b]y any insured" refers to the insured under the policy, which, here, is Plaintiff—the insured party.  The plain language in the Limited Assault and Battery Coverage

---

 (3) Negligent hiring, supervision, retention or training of any "employee" of the Insured; or
 (4) Implementation of adequate security measures, through security personnel, surveillance or other security devices.

(Doc. No. 32-5 at 42–43.)

5    Defendant maintains that because the language of the Sutton Policy is unambiguously clear, coverage is precluded.  (See Doc. Nos. 31-1, 32-2.)  As noted, Plaintiff does not claim that the language of the Sutton Policy or its exclusions are ambiguous.  (See Doc. Nos. 21, 33, 34.)

Endorsement shows that coverage does not extend to "assault and battery incidents" committed by third parties. In the Underlying State Court Action, Jane Doe alleges she was sexually assaulted by a Lyft driver—a third party—not by an employee of Plaintiff, the insured. Plaintiff's argument to the contrary, that acts of third-parties are covered under the policy, would expand coverage to any "assault and battery incidents" committed by anyone—an interpretation that is unsupported by the plain language of the policy. See Newchops Restaurant Comcast LLC v. Admiral Indemnity Co., 507 F. Supp. 616, 621 (E.D. Pa. 2020) ("…[P]olicy language may not be stretched beyond its plain meaning to create ambiguity."). Thus, there is no coverage under the Sutton Policy for the sexual assault of Jane Doe K.K. committed by the Lyft driver because its plain language does not extend to "assault and battery incidents" committed by third parties.

### c. Exclusions in the Sutton Policy Preclude Coverage

In addition, the Sutton Policy's Liquor Liability and Assault and Battery Exclusions nonetheless preclude coverage. The Court will address each exclusion seriatim.

### i. Liquor Liability Exclusion Applies

Defendant also maintains it is absolved from providing coverage because of the Liquor Liability Exclusion. (Doc. No. 32-2 at 12–14.) Once again, this exclusion provides:

**2. Exclusions**

**c. Liquor License Liability**

This insurance does not apply to:
"Bodily injury" or "property damage" for which any insured may be held liable by reason of:
1. Causing or contributing to the intoxication of any person;
2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

16

   (a) The supervision, hiring, employment, training or monitoring of
      others by that insured; or
   (b) Providing or failing to provide transportation with respect to any
      person that may be under the influence of alcohol;
      if the "occurrence" which caused the "bodily injury" or "property
      damage", involved that which is described in Paragraph (1), (2), or
      (3) above.
      However this exclusion applies only if you are in the business of
      manufacturing, distributing, selling, serving or furnishing alcoholic
      beverages.  For the purposes of this exclusion, permitting a person
      to bring alcoholic beverages on your premises, for consumption on
      your premises, whether or not a fee is charged or a license is
      required for such activity, is not by itself considered the business
      of selling, serving or furnishing alcoholic beverages.

***

(Id. at 12–13.)

More specifically, Defendant avers that because the Underlying State Court Action alleges the negligent provision of alcohol by Plaintiff to Jane Doe—which is inextricably linked with the alleged sexual assault—the Liquor Liability Exclusion bars coverage.  (Id.)  Plaintiff, on the other hand, contends that because the Underlying State Court Action alleges the negligent provision of alcohol, the Liquor Liability exclusion does not apply.  (Doc. No. 21 at 7.)

With respect to determining whether an insurance policy's liability exclusion applies, the burden is on the insurer to prove denial of coverage is proper.  White Pine Ins. Co., 2018 WL 1141356, at *6.  The same is true when an insurer asserts a liquor liability exclusion abrogates coverage obligations.  AIX Specialty Ins. Co., 2022 WL 767834, at *9.  When an insurer raises a policy's exclusions as the basis for denying coverage, a court must look at the factual allegations in the complaint "and … not rely simply on the labels applied to those averments."  Id. (citing State Auto. Mut. Ins. Co. v. Lucchesi, No. 11-0735, 2012 WL 2009355, at *5 (M.D. Pa. June 5, 2012) (further citations omitted)).  Further, when underlying allegations of negligence are

17

"'inextricably intertwined with the negligent provision of alcohol,' the liquor liability exclusion will bar coverage." Id. (quoting Lucchesi, 2012 WL 2009355, at *5). Put differently,

> [i]n the liquor liability context, 'the question … becomes whether the negligence claims seek to impose liability on the insured on any other basis than as a business which sold and served alcoholic beverages to [plaintiff.]' Those Certain Underwriters v. 6091 Frankford Ave., Inc., No. 96-4722, 1997 WL 22401, at *2 (E.D. Pa. Jan. 21, 1997) (further citations omitted). If the claims of negligence in the underlying complaint arise solely out of the selling or serving of alcohol, the claims are not potentially within the scope of a given insurance policy and coverage is properly denied.

Hamburg v. 14,000 Siblings, Inc., 1998 WL 559783, at *2 (E.D. Pa. Aug. 28, 1998) (finding that "despite a claim of 'general negligence,' the sole basis for liability against the insured [was] the serving of alcoholic beverages" and thus the insurance policy's liquor liability exclusion barred coverage).

To determine whether the Liquor Liability Exclusion in the Sutton Policy precludes coverage in the Underlying State Court Action, a recitation of the allegations made by Jane Doe against Plaintiff are necessary:

a. outrageously, recklessly, negligently and carelessly serving intoxicating beverages in such quantities to Plaintiff Jane Doe K.K. as to cause her to become intoxicated;

b. outrageously, recklessly, negligently and carelessly continuing to serve intoxicating beverages to Plaintiff Jane Doe K.K. at a time when agents, servants, representatives and/or employees of…Skeeters Pub, Reggies, Inc.,…knew or should have known that Jane Doe K.K. was visibly intoxicated;

c. employing incompetently trained bartenders, waiters and/or waitresses and/or other employees, agents, representatives and/or servants;

d. recklessly, negligently and carelessly failing to instruct or train its agents, servants, representatives and/or employees regarding the amounts of intoxicating beverages to be serves [sic] to customers, patrons and/or business invitees of the Defendant;

18

e.  recklessly, negligently and carelessly failing to instruct or train its agents, servants, representatives and/or employees to recognize the signs of visible intoxication;

f.  recklessly failing to have or to follow an established program instituted and operating which would prevent service to visibly intoxicated patrons;

g.  recklessly failing to stop service of intoxicating beverages to Plaintiff Jane Doe K.K., who was obviously and visibly intoxicated and in a condition constituting an unreasonable and outrageous risk of harm to other persons;

h.  recklessly serving liquor, malt or brewed beverages and permitting liquor, malt or brewed beverages to be served, furnished or given to persons who are visibly intoxicated in violation of the laws of the Commonwealth of Pennsylvania and in particular the Pennsylvania Liquor Code, 47 PA. C.S.A. §4-493;

i.  recklessly violating the terms and conditions of the liquor license issued to Defendant;

j.  other acts or omissions constituting negligence, gross negligence, recklessness, and carelessness as may be ascertained through discovery and may be demonstrated by the evidence at the trial of this case.

(Doc. No. 32-4 ¶ 275.)  The Underlying State Court Action levies the same allegations against

Plaintiff in Count XIV under Liquor Liability. (See id. ¶ 291.)

Defendant submits the Liquor Liability Exclusion precludes coverage.  (Doc. No. 32-2 at

14.)  To support this position, Defendant quotes Liquor Liability Exclusion as follows:

**2. Exclusions**

**c. Liquor License Liability**

This insurance does not apply to:
"Bodily injury" or "property damage" for which any insured may be held liable by reason of:
1.  Causing or contributing to the intoxication of any person;
2.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
3.  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:
(a)  The supervision, hiring, employment, training or monitoring of others by that insured; or

19

(b) Providing or failing to provide transportation with
respect to any person that may be under the
influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property
damage", involved that which is described in Paragraph (1), (2), or
(3) above.

However, this exclusion applies only if you are in the business of
manufacturing, distributing, selling, serving or furnishing alcoholic
beverages.  For the purposes of this exclusion, permitting a person
to bring alcoholic beverages on your premises, for consumption on
your premises, whether or not a fee is charged or a license is
required for such activity, is not by itself considered the business
of selling, serving or furnishing alcoholic beverages.

\*\*\*

(Id. at 12–13.)  Defendant asserts that in the Underlying State Court Action, where Jane Doe alleges she was sexually assaulted because she was visibly intoxicated, there is no coverage under the Sutton Policy.  (Id. at 14) (emphasis added).  More specifically, Defendant highlights that because the Liquor Liability Exclusion bars coverage for injuries that arise out of being overserved alcohol, regardless of the assault and battery of the third-party that occurred off the premises, there can be no coverage in the Underlying State Court Action.  (Id.)

Plaintiff argues to the contrary that allegations of negligence, despite being followed by intentional conduct by a third-party, trigger an insurer's duty to defend.  (Doc. No. 21 at 6) (citing Donegal Mutual Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007)). Plaintiff expands on this argument by contending that because the alleged negligence by Plaintiff occurred before Jane Doe was sexually assaulted, the claims asserted in the Underlying State Court Action are not barred by the Sutton Policy's Liquor Liability Exclusion.  (Doc. No. 34 at 10.)

Plaintiff's arguments here regarding the Liquor Liability Exclusion are like those made by the insured in Transp. Ins. Co. v. Heathland Hospitality Group LLC, 783 Fed. App'x 186 (3d Cir. 2019).  In Transp. Ins. Co., the insured, Heathland Hospitality Group LLC ("Heathland"),

20

appealed a grant of summary judgment in favor of the insurer, Transportation Insurance Company. Id. In Transp. Ins. Co., the Third Circuit held that there was neither a duty to defend nor a duty to indemnify—specifically because the insurance policy contained a liquor liability exclusion. Id. The Third Circuit considered whether the liquor liability exclusions in the insurance policy issued by Transportation Insurance Company to Heathland precluded coverage when Heathland was sued by the Administratix of the Estate of Frank J. Serratore, a man who was killed by a drunk driver who was overserved alcohol by Heathland. Id. at 190. In acknowledging that the Pennsylvania Supreme Court "tells us that an insurer's duty to defend turns on the allegations within the four corners of a complaint against the terms of the insurance policy," the Third Circuit held as follows:

> As acknowledged by the District Court, while it is true that some of the claims [made by the estate of the deceased] do not refer to the provision of alcohol, those claims are not independent from the provision of alcohol. Rather, all of Heathland's allegedly negligent acts and/or omissions are closely linked to Heathland's…negligent provision of alcohol.
>
> ***
>
> Here, the complaint alleges [the drunk driver] "consumed" alcohol while on the premises of the [insured], and not only "became intoxicated" but was also "served alcohol while visibly intoxicated." It further alleges that [the insured] "sold or gave" the alcohol to [the drunk driver]. Thus, based on the allegations in the complaint, [the deceased]'s fatal bodily injury is one for which [the insured] "may be held liable by reason of…[c]ausing or contributing to the intoxication of" [the drunk driver], or "by reason of…furnishing" alcohol to [the drunk driver] when he was "under the influence of alcohol." Accordingly, under the four corners rules, all of [the estate of the deceased]'s negligence claims fall squarely within the liquor liability exclusions.

Id. at 191 n.29.

Here, like in Transp. Ins. Co., comparing the four corners of the Underlying State Court Action to the Liquor Liability Exclusion, it is evident there is no coverage. First, each of Jane

21

Doe's allegations against Plaintiff arise out of being overserved alcohol while visibly intoxicated, causing her to fall victim to sexual assault at the hands of a Lyft driver.  The Liquor Liability Exclusion precludes coverage for injuries for which any "[] insured may be liable for by reason of causing or contributing to the intoxication of any person" or even for "[t]he furnishing of alcoholic beverages to a person…under the influence of alcohol."  (Doc. No. 32-1 at 3.)  Jane Doe alleges that the harm she suffered was precisely because she had been overserved alcohol, was intoxicated, and was thus unable to give consent or block the harm to her.  Each of Jane Doe's allegations against Plaintiff are intertwined with the provision of alcohol and within the "four corners rule."  AIX Specialty Ins. Co., 2022 WL 767834, at *9.  Therefore, the Sutton Policy does not provide coverage to Plaintiff.

### ii.  Assault and Battery Exclusion Applies

Additionally, Defendant asserts that the Assault and Battery Exclusion also bars coverage because the sexual assault alleged by Jane Doe qualifies as an "assault or battery incident" that is excluded by this provision.  (Id. at 14.)  In support of this argument, Defendant quotes the Assault and Battery Exclusion which reads as follows:

> III. EXCLUSIONS
>
> A.  Additional Exclusion Applicable to the COMMERCIAL
>     GENERAL LIABILITY COVERAGE FORM
>     The following exclusion is added to the COMMERCIAL
>     GENERAL LIABILITY COVERAGE FORM: Injury, damage
>     or loss, however caused, arising, directly or indirectly, out of:
>     1. Assault;
>     2. Battery;
>     3. Any "assault or battery incident"

22

(Id.)  Defendant submits that the sexual assault alleged by Jane Doe in the Underlying State Court Action is an "assault or battery incident" as the term is plainly defined[6] in the Sutton Policy.  (Id.)  Thus, according to Defendant, there can be no coverage based on the language of the Assault and Battery Exclusion because it explicitly states that coverage will not apply to any "assault and battery incident."  (Id.)

Conversely, Plaintiff argues that exclusions barring coverage for sexual assault or intentional acts do not negate the duty to defend when a complaint alleges negligence under Pennsylvania's Dram Shop Act.  (Doc. No. 21 at 6–7.)

Here, Jane Doe alleges she was the victim of a sexual assault at the hands of a Lyft driver. This is an "assault and battery incident" as the term is defined in the Sutton Policy: "harmful or offensive contact between or among two or more persons…"  (Doc. No. 32-2 at 9.)  Thus, the Assault and Battery Exclusion in the Sutton Policy also excludes coverage, and therefore, Defendant has no duty to defend and indemnify Plaintiff in the Underlying State Court Action.

### d.  Punitive Damages Are Not Covered Under the Sutton Policy

Next, the parties dispute whether the punitive damages sought by Jane Doe against Plaintiff in the Underlying State Court Action are covered by the Sutton Policy.  Defendant maintains that because the Sutton Policy has an exclusion for punitive damages, there is no coverage.  (Doc. No. 32-2 at 15–17.)  Conversely, Plaintiff argues that because the claims alleged by Jane Doe in the Underlying State Court Action potentially come within the coverage of the Sutton Policy, any punitive damages awarded in the Underlying State Court Action must be paid by Defendant.  (Doc. No. 34 at 13–14.)

---

[6]   As noted earlier, the parties agree that the "sexual assault" of Jane Doe K.K. was an "assault and battery incident."  See supra note 4.

23

As discussed previously, Pennsylvania imposes on insurers a broad duty to defend. White Pine Ins. Co., 2018 WL 1141356, at *5.  Further, when an underlying state court action alleges injuries which may be within the scope of the policy, the insurer must defend until such time that the "insurer can confine the claim to recovery that the policy does not cover."  Id. However, the duty to defend is appropriately denied when the allegations fall within a clear and unambiguous exclusion of coverage.  Id.

Here, the Sutton Policy contains a clear and unambiguous exclusion of coverage for punitive damages:

> **EXCLUSION-PUNITIVE OR EXEMPLARY DAMAGES**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILTIY COVERAGE FORM
>
> LIQUOR LIABILITY COVERAGE FORM
>
> Regardless of any other provision of this policy, this policy does not apply to punitive or exemplary damages.
>
> If a "suit" is brought against any insured, and falls within the coverage provided by the policy, seeking both compensatory damages (damages for economic loss and pain and suffering) and "punitive or exemplary damages" (damages as a means of punishment), no coverage shall be provided by this policy for any costs, interest, defense costs, attorney or legal fees or any type of damages attributable to punitive or exemplary damages.
>
> "Punitive or exemplary damages" means those damages imposed to punish a wrongdoer and to deter others from similar conduct.

(Doc. No. 32-5 at 34.)

The plain language of the exclusion for punitive damages makes clear that the policy will not cover damages sought as a means of punishment.  In the Underlying State Court Action, Jane

24

Doe seeks punitive damages from Plaintiff as a form of punishment for its conduct: overserving her alcohol, rendering her unable to give consent and fall victim to sexual assault by a Lyft driver.  Unfortunately for Plaintiff, these types of damages are unambiguously precluded by the clear exclusion on punitive damages in the Sutton Policy.

### e.  Plaintiff's Claim for Bad Faith Fails

Finally, in the Motion for Summary Judgment, Plaintiff contends that Defendant's refusal to defend amounts to bad faith under Pennsylvania's Bad Faith Statute, 42 PA. CONS. STAT. § 8371.  (Doc. No. 21 at 8.)  Plaintiff argues that because Defendant denied coverage "despite allegations that clearly fall within the [Sutton] [P]olicy's liquor liability," Defendant has acted in bad faith in violation of Pennsylvania law.  (Id.)  In the Cross-Motion for Summary Judgment, Defendant submits that the bad faith claim fails as a matter of law because Pennsylvania law defines "bad faith" on behalf of insurance providers as "any frivolous or unfounded refusal to pay proceeds of a policy."  (Doc. No. 32-2 at 17.)  Defendant argues that based on the clear and unambiguous language of the Sutton Policy and its exclusions, there was a reasonable basis to deny coverage.  (Id. at 18.)

Under Pennsylvania law, a plaintiff can recover for bad faith against an insurer under 42 PA. CONS. STAT. § 8371 when a plaintiff shows, by clear and convincing evidence, that the insurer: (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim.  J.C. Penney Life Ins. Co. v. Pilosi, 393 F. 3d 356, 367 (3d Cir. 2004).  Pennsylvania courts have defined "bad faith" as "any frivolous or unfounded refusal to pay proceeds of a policy."  Id. (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).  The clear and convincing evidence standard requires the plaintiff show "that the evidence is so clear, direct,

25

weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendant[] acted in bad faith." Id. (citing Bostick v. ITT Hartford Grp., Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)).

Here, Plaintiff argues that Defendant owes a duty to defend until the claims in the Underlying State Court Action are "confined solely to non-covered conduct." (Doc. No. 21 at 8.) Plaintiff maintains that because the allegations in Jane Doe's Complaint in the Underlying State Court Action fall within the Sutton Policy's Liquor Liability provision, there is a duty to defend. (Id.) Plaintiff further argues that because Defendant has focused on the "later criminal conduct of a third-party Lyft driver," instead of applying the four-corners rule, Defendant has acted in bad faith denying coverage. (Doc. No. 34 at 14–15.)

Defendant on the other hand, submits that Plaintiff has failed to meet its burden of proving by clear and convincing evidence that Defendant (1) did not have a reasonable basis for denying coverage and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim. (Doc. No. 32-2 at 18.) Because the language of the Sutton Policy precludes coverage for the claims alleged in the Underlying State Court Action, there is no basis to assert Defendant acted in bad faith denying coverage. (Id.)

In addition, based on the undisputed facts, Plaintiff has failed to demonstrate that Defendant acted in bad faith in denying coverage. Merely insinuating bad faith, absent clear and convincing evidence to prove otherwise, is insufficient to establish a claim. Terletsky, 649 A.2d at 688. As discussed extensively supra, the plain language of the Sutton Policy and its myriad exclusions make clear what is covered under the policy and what is not. There is no indication that Defendant acted unreasonably in denying coverage per the terms of the Sutton Policy. Thus, Plaintiff's claim for Bad Faith against Defendant will be denied.

26

## V.    CONCLUSION

On summary judgment, a court views the facts in the light most favorable to the non-movant and this standard applies to cross-motions for summary judgment of a plaintiff and a defendant.  Given this standard, in this case, Plaintiff has failed to show that there are genuine disputes of material fact warranting coverage or a duty to defend under the Sutton Policy.  On the other hand, Defendant has shown that no genuine disputes of material fact warrant coverage.  Thus, for the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 21) will be denied, and Defendant's Cross-Motion for Summary Judgment (Doc. No. 32) will be granted.  An appropriate Order follows.